UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v.-

R.R., MALE JUVENILE,

Defendant.

S 23 Cr. 203 (JHR)

OPINION & ORDER (**SEALED**)

JENNIFER H. REARDEN, District Judge:

On October 26, 2023, Defendant R.R. was charged as a minor under the Juvenile Delinquency Act (the "JDA"), 18 U.S.C. § 5031 *et seq*, with five counts of juvenile delinquency for (1) murder in aid of racketeering, (2) murder through use of firearm, (3) discharge of firearm, (4) attempted murder and assault with a dangerous weapon, and (5) a second count of discharge of firearm. *See* October 26, 2023 Sealed Signed Superseding Juvenile Information. On April 18, 2023, Defendant had been indicted as an adult for racketeering conspiracy, ECF No. 1, based on having ratified, after reaching the age of majority, his membership in the same racketeering enterprise underlying the juvenile charges. October 26, 2023 Sealed Motion to Transfer ("Motion to Transfer") at 3. On March 17, 2025, Defendant filed a Motion to Request a Psychiatric Or Psychological Evaluation And Hold a Hearing to Determine His Competence to Stand Trial ("Competency Motion"), which the Court granted. April 15, 2025 Sealed Hr'g Tr. at 10:8. The Court held a competency hearing on September 12, 2025. For the reasons set forth below, the Court finds Defendant competent to stand trial.

## BACKGROUND

In conjunction with charging Defendant as a juvenile, the Government moved to transfer him to adult status under the discretionary transfer provisions of the JDA. *See* Motion to Transfer at 2. In that connection, the defense and the Government sought to have Defendant examined by their respective psychologists, Dr. Jessica Pearson and Dr. Cheryl Paradis. Dr. Paradis, a licensed

forensic psychologist, evaluated Defendant on March 1, 2025 and produced a report on March 20, 2025. Ex. E, April 2, 2025 Sealed Opposition to Competency Motion. Dr. Pearson met with Defendant but did not produce a report.

Between November 2023 and March 2025, Defendant had been seen several times by psychologists at the Metropolitan Detention Center (the "MDC"). Ex. A, Competency Motion. In addition, another defense-retained psychologist, Dr. Hersha Diaz, had assessed Defendant between December 2023 and January 2024. Dr. Diaz's objective was to "gain insight into the quality of [Defendant's] mental health and cognitive functioning, assess his current behavioral and emotional functioning, and assist with treatment planning." Ex. B, Competency Motion, January 29, 2024 Report by Dr. Hersha Diaz ("Diaz Report") at 1.

During a status conference on March 11, 2025, defense counsel raised concerns about Defendant's "competence, [and] his ability to comprehend what exactly is happening." March 11, 2025 Sealed Hr'g Tr. at 4:14-15. The Court directed counsel to file an application if he wanted the Court to order a competency evaluation and hearing. *Id.* at 8:3-5. On March 17, 2025, Defendant filed his Competency Motion. Although Defendant had been evaluated previously, the Court had "a few concerns" about "relying on what [wa]s already in the record." April 15, 2025 Sealed Hr'g Tr. at 6:10-12. Specifically, "the only person who ha[d] evaluated [Defendant] . . . with competency in mind [wa]s [the Government's] expert, Dr. Paradis." *Id.* at 6:17-18. The Court also noted "[t]he age of some of the assessments." *Id.* at 6:19. The Court directed the parties to confer and seek to agree on an expert. *Id.* at 16:6-7. On April 23, 2025, the parties informed the Court that they were unable to agree and proposed competing experts for consideration. April 23, 2025 Sealed Letter from Government. The Court inquired whether the parties would object to the appointment instead of Dr. Ziv Ezra Cohen, a forensic psychiatrist, to conduct a competency

evaluation of Defendant pursuant to 18 U.S.C. §§ 4241(b) and 4247(b). *See* May 11, 2025 Sealed Order. Neither party objected, and the Court appointed Dr. Cohen. May 22, 2025 Sealed Order.

Dr. Cohen evaluated Defendant on July 8, 2025 and produced a report (the "Cohen Report") on August 4, 2025. The Cohen Report stated that "[Defendant] is competent to stand trial" because "[he] demonstrates a factual and rational understanding of the legal process, is able to comprehend the roles of courtroom participants, understands the charges and potential consequences he faces, and can assist his attorney in preparing his defense." Cohen Report at 12. At the September 12, 2025 hearing, the defense called Dr. Cohen, and the Government called Dr. Paradis. Neither Dr. Diaz nor Dr. Pearson was called. Both Dr. Cohen and Dr. Paradis testified with "a reasonable degree" of medical or psychological certainty that Defendant was competent to stand trial. September 12, 2025 Sealed Hr'g Tr. ("Competency Hearing") at 77:7-8; 123:22-23. Before closing the hearing, the Court asked whether the defense or the Government "wish[ed] to call any witnesses or present any other evidence for the Court's consideration in evaluating [ ] [D]efendant's competency." *Id.* at 147:3-5; 6:9. Both parties declined. *Id.*

**LEGAL STANDARDS**

"The relevant standards are undisputed." *United States v. Marmolejos*, No. 18-CR-303-1 (JMF), 2019 WL 2191139, at *1 (S.D.N.Y. May 21, 2019) (finding defendant competent to stand trial). Pursuant to 18 U.S.C. § 4241(d), a defendant is mentally incompetent to stand trial if he is "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." The Court must determine by a preponderance of the evidence whether the defendant has "(1) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and (2) 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995) (quoting

*Dusky v. United States*, 362 U.S. 402, 402 (1960)). The Court's "'determination may rest on both medical evidence and its own observations of the defendant.'" *United States v. Kelsey*, 807 F. App'x 61, 64 (2d Cir. 2020) (quoting *Nichols*, 56 F.3d at 411) (affirming finding of competence) (summary order).

**DISCUSSION**

Applying those standards, the Court finds by a preponderance of the evidence that Defendant is competent to stand trial. "The Court has been presented with substantial medical evidence regarding the issue of [Defendant's] mental competence to stand trial." *United States v. Gambino*, 828 F. Supp. 191, 194 (S.D.N.Y. 1993). Moreover, "[none] of the [ ] psychologists who examined [Defendant for competency] concluded that he was incompetent." *United States v. Bent*, 654 F. App'x 11, 12 (2d Cir. 2016) (affirming finding of competence) (summary order).

**A. Dr. Cohen's Findings**

"First and foremost, the Court is persuaded by Dr. Cohen's thorough and credible report and testimony." *Marmolejos*, 2019 WL 2191139, at *1. Importantly, Dr. Cohen "was appointed by the Court and thus has no direct stake in the outcome." *Id.* Dr. Cohen is a Board-certified psychiatrist and forensic psychiatrist with more than two decades of experience, including two fellowships in forensic psychiatry. Competency Hearing at 16:11-20. He also has significant experience conducting competency evaluations on behalf of the Government, defendants, and at the request of the court. *Id.* at 17:1-5. Dr. Cohen's opinion was "based on an in-person forensic psychiatric interview lasting approximately one and a half hours" and review of "two prior psychological evaluations, and available medical, psychiatric, educational, and family court records." Cohen Report at 3.

Dr. Cohen determined that Defendant "understood that he was facing multiple counts," "was able to describe the allegations in general terms, and the allegations of his role in the alleged

crime," and "understood that . . . one of the most serious charges was related to a murder charge, as well as assault with a deadly weapon, and robbery, and so forth." Competency Hearing at 22:18-24. In addition, Defendant "felt that he could work with [his counsel] and that he trusted [counsel]." *Id.* at 32:22-23. And Defendant "understood the role of the judge." *Id.* at 70:17.

Dr. Cohen further observed that Defendant was "attentive," "made excellent eye contact," "heard everything [Dr. Cohen] said," and "had no problem comprehending [Dr. Cohen's] questions." *Id.* at 62:10-13. Dr Cohen "found that [Defendant's] thought process was linear and coherent, that he had good memory, good, attention span, good reasoning skills, that he had an understanding of the charges against him." *Id.* at 70:9-12.

Dr. Cohen also addressed Defendant's mental health history and questions relating to [redacted]:

- Defendant told Dr. Cohen that "he [had] never received mental health care, had never been in psychiatric treatment, had never received psychiatric medication," *id.* at 50:6-8, and he "denied any suicide attempts," *id.* at 52:14-15.

- When asked about Defendant's prior examinations at MDC, where Defendant "[redacted]

- [redacted]

- [redacted] Dr. Cohen "attribute[d] [Defendant's] magical thinking to

some emotional immaturity, given [Defendant's] age and his level of education and his life experiences." *Id.* at 56:15.

- [redacted]

- Upon review of Defendant's school records, Dr. Cohen did not find "find anything . . . that anyone in the school thought that he had mental health issues or was struggling with not being in reality because he was focused on an imaginary friend, so there[] [was] an absence of anything indicating something along those lines." *Id.* at 60:1-5.

In short, [redacted] *Id.* at 68:7-9. In any case, according to Dr. Cohen, a defendant could "experience symptoms of mental illness and still be considered fully competent to stand trial." *Id.* 69:18-20; *see also United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986)) ("It is well-established that some degree of mental illness cannot be equated with incompetence to stand trial."); *see also Gambino*, 828 F. Supp. at 202 ("[T]he fact that a defendant may have certain intellectual or cognitive problems . . . does not inevitably lead to the conclusion that he was incapable of taking the stand and thereby unfit to stand trial.").

"Based on his extensive experience and training," *Marmolejos*, 2019 WL 2191139, at *2, his interaction with Defendant, and his review of Defendant's records and other evaluations, Dr. Cohen "concluded to a reasonable degree of medical certainty that [Defendant] is competent to stand trial," Competency Hearing at 77:7-8.

**B. Dr. Paradis's Findings**

After interviewing Defendant and his mother, and reviewing Defendant's educational and MDC records and other evaluations, Dr. Paradis found to "a reasonable degree of psychological

certainty . . . [that Defendant] is competent." *Id.* at 123:22-23. Dr. Paradis has more than 37 years of experience in forensic psychology, *see id* at 81:7, and has performed "over a thousand" competency evaluations, *id.* at 84:14. Based on her "training in forensic psychology," Dr. Paradis "always assess[es]" for "malingering," *id.* at 90:24-25; 91:1, —i.e., the "feigning or exaggeration of symptoms," *id.* at 90:13. Here, after conducting specific tests, she concluded that Defendant was malingering. *Id.* at 103:15-16. For example, when Dr. Paradis asked whether Defendant was in "school, in a hospital, or jail," *id.* at 113:19, Defendant initially did not respond, then inquired why Dr. Paradis was asking and refused to "cooperate with the question," *id.* at 113:20. Dr. Paradis's impression was that "[Defendant] certainly [knew] where he [was], and so he[] [was] being uncooperative, most likely to give [Dr. Paradis] the impression that [Defendant] has some type of either mental illness or intellectual disability." *Id.* at 113:23-25;114:1. In general, she found Defendant's "presentation [ ] so extreme and inconsistent with genuine psychiatric illness that [she] was able to reach a conclusion that he was purposely being uncooperative." *Id.* at 94:4-6.[1]

When asked about Defendant's prior evaluations at MDC, the records of which refer to "adjustment disorder, major depressive disorder, and pervasive development disorder," *id.* at 101:14-15, Dr. Paradis explained that Defendant's "diagnosis [had] changed to an adjustment disorder, which is significantly less serious, and it's really more that the person is having trouble adjusting to their environment." *Id.* at 102:3-5. Dr. Paradis confirmed that no one at MDC had "conclude[d] that [ ] [D]efendant had a psychotic illness," or that Defendant was "ever prescribed "antipsychotic medication." *Id* at 98:17-22. Overall, Defendant's medical records have "show[n]

[1] Dr. Cohen did not evaluate Defendant for malingering because he "didn't voice any symptoms when [Dr. Cohen] met with him, so there was no basis for [Dr. Cohen] to say that he was malingering." Competency Hearing at 61:13-14.

an improvement in mental state from the time he was first detained until now." *Id.* at 102:8-9; *see also Newfield v. United States*, 565 F.2d 203, 206 (2d Cir. 1977) (stating that "[t]he court may consider a defendant's history of psychiatric treatment in making [a competency] decision").

**C. Dr. Diaz's Report**

Although Dr. Diaz did not testify at the competency hearing, her January 29, 2024 report is an exhibit to Defendant's Competency Motion and was considered by both Dr. Cohen and Dr. Paradis. *See* Competency Hearing at 21:13; 94:20. According to Dr. Paradis, Dr. Diaz's report is "not a forensic report. The title of the report is, psychological evaluation or clinical. It doesn't use the word 'forensics.' In the first paragraph, [Dr. Diaz] describes her experience and it doesn't list any forensic training. [Dr. Diaz] doesn't administer any forensic tests, malingering[,] . . . intellectual or learning tests." Competency Hearing at 120:4-10.[2] In any event, Dr. Diaz did not evaluate Defendant for competency. Instead, she was asked to "assess [Defendant's] behavioral and emotional functioning" as of January 2024 "and assist with treatment planning." Diaz Report at 1.

Dr. Diaz's January 29, 2024 report noted "evidence of psychosis, internal preoccupation, and [redacted] Diaz Report at 5. According to Dr. Cohen, however, "there were things in the report with Dr. Diaz that are not replicated in other evaluations." *Id.* at 48:23-25. Defendant also "gave [Dr. Cohen] a different narrative" on a few different issues. *Id.* at 50:10-11; *see, e.g.*, *id.* at 50:9-13 [redacted]

[2] The Government previously objected to appointing Dr. Diaz to evaluate Defendant's competency because she is "not a forensic psychologist." April 15, 2025 Sealed Hr'g. Tr. at 14:20.

Defendant "said he never tried to harm himself").[3] As Dr. Cohen highlighted, "there's really only one evaluator" among those who have examined Defendant who "was convinced that [he] was psychotic, and that was Dr. Diaz." *Id.* at 71:11-12. In contrast, neither Dr. Cohen nor Dr. Paradis "f[ound] [Defendant] to have symptoms consistent with psychosis." *Id.* at 71:24-25; *see also id.* at 145:6-7 ("It was evident that [Defendant] wasn't genuinely psychotic.").

"It [i]s within the province of th[e] court, as the finder of fact, to decide which of the competing medical views to credit." *United States v. Villegas*, 899 F.2d 1324, 1342 (2d Cir. 1990). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Kelsey v. United States*, No. 24-391-PR, 2025 WL 615173, at *2 (2d Cir. Feb. 26, 2025) (citation and alterations omitted) (affirming finding of competence where the court weighed one expert's "report and testimony" against "[prior medical] records and [another expert's] testimony") (summary order). The Court "credit[s]" Dr. Cohen and Dr. Paradis's conclusions, given that nearly two years have passed since Dr. Diaz evaluated Defendant, and given that Dr. Cohen and Dr. Paradis's opinions, while distinct from those of Dr. Diaz, align with each other. *Villegas*, 899 F.2d at 1342.

**A. The Court's Observations**

Finally, the Court's own experience with Defendant comports with that of the experts. *See United States v. Ioulevitch*, 508 F. App'x 73, 75 (2d Cir. 2013) ("We have frequently reiterated that the district court's determination of competency based on its direct observations of the

[3] As Dr. Paradis explained, "if defendant had the ability to change a strategy," "[i]t's further evidence that someone is competent to proceed." *Id.* at 122:16-19; *see also Marmolejos,* 2019 WL 2191139, at *4 ("If anything, that argument [that the differences in presentation before the different experts were due to 'lack of effort' and 'lack of rapport'] weighs in favor of finding [defendant] competent as it suggests an ability to function when he chooses; indeed, it is strikingly consistent with Dr. Cohen's own conclusion that [defendant] made deliberate choices regarding his interactions with the examiner." (internal citation and quotations omitted)).

defendant is entitled to deference."). Defendant "has been present and appropriately responsive in court proceedings—evidenced by his standing and being seated at the Court's direction, along with his prompt and unambiguous responses to the yes-or-no questions"—and even to the more complex questions—"that the Court has asked him." *Marmolejos*, 2019 WL 2191139, at *4; *see also* April 15, 2025 Sealed Hr'g (responding "I understand, Your Honor" to Court's question); Competency Hearing at 2:22 (similar); November 19, 2024 Hr'g. Tr at 36:18 (responding "Yes, I understood that" to Government's explanation that "the most recent offer [they] gave defendant was the best and final offer"); *id.* at 36:21-23 ("[A]s I told you a while ago, yes, I do want to change attorneys, and for the reasons that I explained to you.").

**CONCLUSION**

In sum, Defendant has both "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *See Dusky*, 362 U.S. at 402. Accordingly, pursuant to 18 U.S.C. § 4241(d), the Court finds Defendant competent to stand trial.

SO ORDERED.

Dated: October 9, 2025
New York, New York

Jennifer H. Rearden
JENNIFER H. REARDEN
United States District Judge